Harvey Wrecking Company, Plaintiff-Appellant, v. Certain Underwriters at Lloyd's, London, Signatories to Policy Nos. MCL 1167, EL–83 9171, and DT 607295 CA, and Interstate Fire & Casualty Company, Defendants-Appellees.

Gen. No. 52,032.

First District, Second Division.

February 6, 1968.

Goodman, Krasner & Kipnis, and Jerome H. Torshen, of Chicago (Jerome H. Torshen, of counsel), for appellant.

Lord, Bissell & Brook, of Chicago (Forrest L. Tozer and Richard E. Mueller, of counsel), for appellee Interstate Fire & Casualty Company.

MR. JUSTICE LYONS delivered the opinion of the court.

This was originally an action for a declaratory judgment on two separate contracts of insurance. Plaintiff, Harvey Wrecking Company, brought the appeal from the entry of an order by the Circuit Court, which order, upon the motions of defendants, Certain Underwriters at Lloyd's, London, and Interstate Fire and Casualty Company, struck and dismissed plaintiff's complaint for declaratory relief as to both. Since the filing of its Notice of Appeal however, defendant-Lloyd's has been dismissed from the instant cause, this appeal is taken by plaintiff solely as it pertains to defendant-Interstate and its policy of insurance.

Plaintiff, by its complaint, sought a declaration, inter alia, of the respective rights and liabilities of the immediate parties as insured and insurer under a policy for Manufacturers' and Contractors' Liability Insurance issued by Interstate to plaintiff for a one-year period

commencing June 1, 1958 (attached as Exhibit B to complaint). Said agreement purported to afford indemnification to the insured for two categories of possible liability; to wit,

"Coverage A—*Bodily Injury Liability.* To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the hazards hereinafter defined.

"Coverage B—*Property Damage Liability.* To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident and arising out of the hazards hereinafter defined."

The facts appear undisputed on the record before us. The occurrence which gave rise to the present controversy involved a fall by one Ulysses Armstrong, a Harvey workman, with resulting bodily injuries, while during the course and furtherance of his employment with the plaintiff company on January 29, 1959. At the time of his mishap, Armstrong had been participating in the demolition of a certain structure located on North Elston Avenue in Chicago, which premises were, as of that date, under the ownership of E. I. DuPont deNemours and Company. Armstrong initiated proceedings for workmen's compensation against his employer, which claim was satisfied in the amount of $31,863.05 in plaintiff's behalf by defendant-Lloyd's, pursuant to its contract for Workmen's Compensation Insurance, plaintiff executing a release in full discharge to the latter in consideration therefor. Subsequently, Armstrong filed a common-law action in

the Circuit Court for damages for personal injuries sustained by him in the same incident against DuPont as the owner of the premises alleging therein by his complaint certain negligent acts and/or omissions by such owner which occasioned his injury.

DuPont's response to the complaint was that of a third-party complaint against the instant plaintiff as Armstrong's employer predicated upon both express and implied theories of indemnity, whereby DuPont sought the recovery of all sums which it might be required to pay Armstrong in the principal action. Upon receipt of notice of such action, Harvey tendered the defense of same, as per the terms of its insuring agreement, to defendant-Interstate, the latter refusing either to participate in the defense thereof or to agree that coverage for this particular action was afforded by their policy with plaintiff. Plaintiff, accordingly, commenced this present cause against Interstate for a judicial construction and declaration of the rights of the parties under their agreement. To that complaint, Interstate addressed its aforementioned motion to dismiss asserting as grounds Exclusion (k) to Coverage A of the parent policy, which proviso recited:

"This policy does not apply:

". . . under coverage A to bodily injury to or sickness, disease or death of any employee of the insured arising out of and in the course of his employment by the insured; . . . ."

It is from the granting of this motion that plaintiff brings the appeal.

Plaintiff advances a twofold theory for the proposition that error was committed by the trial judge in dismissing its complaint upon the aforesaid exclusion to the policy. It first submits that DuPont's action over for indemnity is one so distinct from the initial action by

its employee against the purported indemnitee that the provisions of subsection (k) excluding from coverage liability for injuries to employees cannot be heard to obtain.

Under the facts of the instant case, we consider that contention to be an untenable one. Absent compelling precedent to the contrary, plaintiff has not dissuaded this court from the position that the independence of a third-party action for indemnity presents a question unique under the facts peculiar to each specific case by which it arises, and not one readily disposed of by resort to some steadfast or unwavering rule as plaintiff suggests was adopted in Boston v. Old Orchard Business Dist., Inc., 26 Ill App2d 324, 168 NE2d 52 (1960) and Moroni v. Intrusion-Prepakt, Inc., 24 Ill App2d 534, 165 NE2d 346 (1960). Moroni and Boston both dealt with actions over for indemnity by a defendant "owner of the premises" within the meaning of the Scaffold Act against the employer of the principal plaintiff, said third-party defendant-employers having, in both instances, theretofore relinquished workmen's compensation benefits to its employee for the same complained of injury. Moroni treated the issue at bar only insofar as the indemnity action did not amount to an attempted double recovery by an employee from his employer, contrary to the applicable provisions of the Workmen's Compensation Act, while Boston simply extended that rule to an instance where the employee-plaintiff had, subsequent to the filing of the third-party complaint, executed a release to the party seeking to be indemnified. It was only from within a setting which presented factual matters patently dissimilar from those of the instant case that the court made the distinction between the initial and latter action over.

Here, and unlike the cases relied upon by plaintiff, the action is one founded upon a contract of insurance, the manifest intent of which must be held to pre-

vail in our consideration of the issue. So too, in the recent case of Palier v. New City Iron Works, 81 Ill App2d 1, 225 NE2d 67 (1967), this court, confronted with somewhat comparable circumstances, was prompted by the overriding considerations necessitated by a statute designed to protect the alleged indemnitor. The instant agreement scrutinized, more specifically the language of Coverage A to which Exclusion (k) pertains, we find that language to be couched primarily in terms of the type of injury to be covered (or as in this case, to be excluded), rather than in terms of the identity of would-be indemnitees for which insurance was or was not to be afforded. Such language, of course must be taken as representative of the reasonable contemplations of the signatories to that agreement and will be interpreted accordingly. See General Acc. Fire & Life Assur. Corp. v. Brown, 35 Ill App2d 43, 181 NE2d 191 (1962), wherein the employee exclusionary clause in an automobile liability policy contained wordage identical to that of the instant Exclusion (k).

Interpreted then in terms of the injuries to be covered, we feel a fair reading of the policy issued to plaintiff requires that DuPont's third-party complaint for indemnity be viewed in terms of Armstrong's prior action against it, inasmuch as DuPont's complaint, in substance, seeks by substitution of plaintiff-Harvey as the real party defendant, to hold said plaintiff-Harvey primarily at fault for the bodily injuries sustained by one of its own employees arising out of and in the course of his employment.

█ We are of the opinion, under the circumstances herein enumerated, that DuPont's action over was sufficiently retentive of the characteristics of the insured's employee's suit against it so as to fall within the purview and realm of noncoverage of Exclusion (k) as a matter of law. We are further persuaded by the similar conclu-

454

sions which were reached in McCabe v. Old Republic Ins. Co., 425 Pa 221, 228 A2d 901 (1967); Hackensack Water Co. v. General Accident Fire & Life Assur. Corp. Ltd., 84 NJ Super 479, 202 A2d 706 (1964); American Stevedores, Inc. v. American Policyholders' Ins. Co., 138 NYS2d 513 (1955); and Cardinal v. United States Cas. Co., 277 App Div 1140, 101 NYS2d 421 (1950), affd 302 NY 853, 100 NE2d 47 (1951), the only cases cited by either litigant which considered this precise subject. Cf. Guetter v. Hooker Glass & Paint Mfg. Co., 50 Ill App2d 164, 200 NE2d 52 (1964) where the court rejected a contention comparable to that of plaintiff-Harvey.

Plaintiff offers the second theory that any injury to be suffered by the alleged indemnitee (DuPont) in making restitution to the injured employee will be an injury to the property of DuPont as opposed to the person of Armstrong, hence the declaratory judgment action against Interstate was and is one involving only property damage liability (Coverage B), which coverage, Interstate admits to be unaffected by the employee exclusionary clause of subsection (k). Unique a theory as it may be, the court is unable to find foundation in fact or law to support the conclusion that plaintiff advocates.

■ Citing numerous cases decided, for the most part, upon the respective court's interpretation of the Illinois Dram Shop and Survival Acts, plaintiff has placed the thrust of his argument upon the broadest of definitions afforded the term "injury or damage to property" by our reviewing courts. Plaintiff submits that any depletion of one's assets by the incurring of a liability for the payment of the expenses of another is an injury or damage to the property of such payor (DuPont) within the meaning of Coverage B of the policy. Plaintiff is correct to the extent that the term "property" when used without qualification, is a word of the very broadest import, connoting any tangible or intangible res which

might be made the subject of ownership. 30 ILP, Property, § 3, p 280, 34A Words and Phrases, Property, pp 108–125. Nor does the court quarrel with plaintiff's contention that any ambiguities created by such term's presence in the subject policy should be resolved in its favor by the various rules of construction which favor the insured.

As against the count in DuPont's complaint predicated upon an express indemnity agreement however, this contention clearly cannot stand, the reason being Exclusion (d) to the parent agreement which recites:

"This policy does not apply:

". . . under divisions 1, 2 and 3 of the Definition of Hazards, to liability assumed by the insured under any contract or agreement; . . . ."

■ ■ As to its count based upon implied in law indemnity, the argument which professes to support plaintiff's theory is simply a fallacious one inasmuch as it endeavors to construe the phrase, ". . . injury to . . . property, including the loss of use thereof, . . . ," in its purest definitional sense. Quite to the contrary, the only valid approach to the subject is, by our construction, to effectuate the intention of the contracting parties by a consideration of the instrument as a whole. Dick v. Goldberg, 295 Ill 86, 128 NE 723 (1920). Plaintiff, moreover, cannot find solace in this regard in the general rules which favor the insured, for those rules must yield to the paramount rule of reasonable construction, we being thereby prohibited from perverting the language of the contract for the purpose of creating an ambiguity where none exists. Yadro v. United States Fidelity & Guaranty Co., 4 Ill App2d 477, 124 NE2d 370 (1955).

■ The meaning then of ". . . injury to . . . property, including the loss of use thereof, . . ." is limited accordingly by the context of the writing in which it is

456

employed. That the provisions of the instant property damage liability clause were intended to encompass only injury to or destruction of *tangible* property is readily apparent from the instrument when examined in its entirety. Not one of the numerous exclusions in the agreement relating to said coverage excludes therefrom any type of occurrence other than that which effects physical specie of tangible property, be it real, personal or mixed. (Exclusions (m), (n) and (o) to coverage B.)

Plaintiff's entire argument on the subject, moreover, is equally inconsistent with the theory of law upon which it was impleaded; to wit, its active negligence was the procuring factor which occasioned the personal injury to the principal plaintiff. The provisions of our Practice Act regulating third-party actions is explicit in limiting the joining of third-party defendants to persons who ". . . may be liable to him for all or part of the plaintiff's claim against him. . . ." (Ill Rev Stats (1965) c 110, par 25 (2).) The action over then continues to be in the nature of a claim for reimbursement for personal injuries notwithstanding the independent considerations necessitated by the manner in which this present action was asserted against plaintiff-Harvey.

We feel that under the facts disclosed by the pleadings, DuPont's claim for reimbursement for expenses to be incurred in satisfying its possible liability for Armstrong's bodily injuries is a claim for damages for such bodily injuries and not one for damage to the property of DuPont. Plaintiff's contention that DuPont's action for indemnity converted an otherwise personal injury action into one for injury to the indemnitee's property by the simple conduit of third-party practice is furthermore both at variance with the pronounced intention of the insuring agreement and unsupported by precedent in our jurisdiction. Also see Napier v. Banks, 9 Ohio App2d 265, 224 NE2d 158 (1967) and cases cited therein.

For the above reasons, the order dismissing the complaint is affirmed.

Order affirmed.

BURKE, P. J. and McNAMARA, J., concur.